UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Robin M. Lee,

    Petitioner

v.

Brian Williams, et al.,

    Respondents

2:14-cv-01426-JAD-CWH

**Order Granting Motion for Summary Judgment and Denying Countermotion and Motion to Reconsider**

[ECF Nos. 101, 104, 107]

    Pro se federal-prison inmate Robin M. Lee sues the Las Vegas Metropolitan Police Department ("Metro") for its deliberate indifference to his mental-health needs. Metro moves for summary judgment,[1] and Lee countermoves for summary judgment[2] and also moves me to reconsider my order denying his belated motion to amend.[3] Because Metro has carried its burden to show that Lee lacks evidence to support his deliberate-indifference claim, I grant Metro's motion for summary judgment, deny Lee's countermotion and motion to reconsider, enter judgment for Metro and against Lee, and close this case.[4]

**Background**

    On August 13, 2015, I granted Metro's motion to dismiss Lee's unlawful-arrest and unlawful-detention claims.[5] But, because it appeared that Lee was really attempting to assert a Fourteenth Amendment claim for deliberate indifference to mental-health needs, I gave him leave to

---

[1] ECF No. 101.

[2] ECF No. 104.

[3] ECF No. 107.

[4] I find these matters suitable for disposition without oral argument. L.R. 78-1.

[5] ECF No. 74.

amend to assert a single claim for deliberate indifference.[6]

Lee alleges in his amended complaint that, while he was a pre-trial detainee at the Clark County Detention Center ("CCDC"), which is operated by Metro, the jail ignored a court order to transfer him to the Lake's Crossing facility for a mental-competency evaluation, resulting in his continued detention at the CCDC for approximately 90 days.[7] According to Lee, he was placed on a waiting list to be transferred to Lake's Crossing because there were no beds then available there.[8] Lee claims that, while he was at the CCDC, he allegedly received inadequate mental-health treatment for his "delusions, psychosis, schizophrenia axis II, auditory hallucinations, and antisocial behaviors."[9] Lee claims that he has an extensive history of mental illness dating back to 1988[10] and that Metro has a policy or custom of deliberately failing to promptly transfer detainees to Lake's Crossing. He asserts a single claim for deliberate indifference to his mental-health needs.[11]

Metro moves for summary judgment, and Lee countermoves for summary judgment and has also filed a motion for reconsideration of my order denying his belated request for leave to amend his complaint to add additional defendants.

---

[6] *Id.*

[7] ECF No. 75 at 3.

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.*

[11] Lee's amended complaint includes some unlawful-arrest allegations, but I have already dismissed with prejudice any claims based on Lee's allegedly unlawful arrest. ECF No. 74.

**Discussion**

**A.     Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed and the case must proceed to the trier of fact.[14]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[15]  The court may only consider facts that could be presented in an admissible form at trial in deciding a motion for summary judgment.[16]

Metro argues that summary judgment is proper because Lee has failed to demonstrate that he exhausted his administrative remedies, the record evidence shows that Metro was not deliberately indifferent to Lee's mental-health needs, and even if Lee could show a constitutional deprivation at the hands of a Metro employee, he lacks evidence that it resulted from a Metro policy or custom.

---

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[14] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[15] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[16] FED. R. CIV. P. 56(c).

**B.     Metro is not the proper defendant for Lee's delayed-transfer claim, and I deny Lee's motion to reconsider my previous order denying him leave to add additional defendants.**

Lee chiefly complains that Metro violated his constitutional rights by failing to promptly transfer him to Lake's Crossing after the state-court judge found him incompetent to stand trial. He correctly points out that the Ninth Circuit has held that a state hospital's delay in admitting incapacitated pretrial detainees violates the their procedural and substantive due-process rights.[17]

Nevada Revised Statute § 178.423(1) provides that, once the court finds a "defendant incompetent, and dangerous to himself [] or to society and that commitment is required for a determination of [his] ability to receive treatment to competency and to attain competence," the court "must order the sheriff to convey the defendant forthwith . . . into the custody" of the Administrator of the Nevada Division of Mental Health and Developmental Services ("DMHDS") for detention and treatment at a division facility. Lake's Crossing is the only such facility in Nevada.

Lee admits in his amended complaint that Metro placed him on a waiting list to be transferred to Lake's Crossing but that he was not transferred until almost 90 days later because the facility was at capacity.[18] Metro attaches an affidavit stating that neither it nor its independent-contractor medical-care provider, NaphCare, has any control over Lake's Crossing's acceptance of patients into its facility, particularly when there is no room for additional patients.[19] Because under Nevada law it is DMHDS—not Metro—that has the duty to accept mentally incapacitated defendants for evaluation and treatment, Metro is entitled to summary judgment on Lee's claim to the extent that it is based on his delayed transfer to Lake's Crossing.

Lee asks me to reconsider my order denying his belated motion for leave to amend his complaint to add official-capacity claims against the Administrator of the DMHDS, the Director of

---

[17] *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1123 (9th Cir. 2003) (affirming district court order granting injunction requiring Oregon state mental hospital to admit incapacitated criminal defendants within seven days of a trial court's finding of their incapacity to proceed to trial).

[18] ECF No. 75 at 3.

[19] ECF No. 101-3.

Lake's Crossing, and the Director of the Nevada Department of Health and Human Resources.[20] Though Lee has given me no valid reason to reconsider my order, I take this opportunity to clarify it in light of my conclusion that it is the DMHDS that bears responsibility for Lee's delayed transfer.

In denying Lee's motion for leave to amend, I found that he failed to show good cause or excusable neglect and I stated that his motion was denied for the additional reason that his proposed amendments were futile.[21] I noted that the DMHDS, Lake's Crossing, and its officials were arms of the state and were thus entitled to Eleventh Amendment immunity from Lee's claims.[22] I clarify that the Eleventh Amendment shields state entities and actors from official-capacity claims for monetary damages only, these defendants would not be immune from suit for declaratory or injunctive relief.[23] But Lee sought leave to assert official-capacity claims against these state defendants and he sought only monetary damages, so his proposed claims were barred by the Eleventh Amendment. I also note that the record reflects that the order deeming Lee incompetent was withdrawn in November 2013[24] when he was released to federal custody to face federal charges.[25] So, even if he had sought injunctive relief, that request would be moot. I therefore deny Lee's motion to reconsider because he has given me no valid reason to do so, and I still find that he fails to show good cause or excusable neglect for his delay and that his proposed amendments would be futile.

---

[20] ECF No. 103. Lee attaches to his summary-judgment motion an excerpt from a consent judgment from this district entering judgment against the Administrator of DMHDS, the Director of Lake's Crossing, and the director of the Nevada Department of Health and Human Resources. ECF No. 104. The judgment that Lee references is in case no 2:13-cv-01102-MMD-GWF. In that case, the plaintiff-detainees sought prospective declaratory and injunctive relief only.

[21] *Id.* at 3.

[22] ECF No. 103.

[23] *Cerrato v. San Francisco Comm. College Dist.*, 26 F.3d 968, 973 (9th Cir. 1994).

[24] State court case no. C-13-2912-48-1.

[25] Lee is currently incarcerated in the Bureau of Prisons.

**C.      Deliberate indifference to mental-health needs**

The failure to provide medical treatment to a prison inmate violates the Eighth Amendment when (1) he has a "serious medical need" and (2) prison officials are "deliberately indifferent" to it.[26] Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[27] A mere difference of medical opinion likewise does not suffice;[28] a prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[29] Because Lee was a pretrial detainee at the CCDC, his claim arises under the Fourteenth Amendment's due-process clause, rather than under the Eighth Amendment's protection against cruel and unusual punishment.[30] Courts typically apply the same standards to each, though the Ninth Circuit Court of Appeals has noted that the Eighth Amendment's deliberate-indifference standard establishes "a minimum standard of care" for determining the rights of pretrial detainees and that, in some cases, due process "may demand more than a lack of deliberate indifference."[31] Additionally, there is no respondeat superior liability in § 1983 actions. Because Lee sues only Metro and not any individual actors, he must show that the constitutional deprivation was caused by execution of a Metro policy or custom.[32]

Lee lacks evidence to show that he suffered a constitutional deprivation. The record reflects that, although Lee underwent multiple health screenings and evaluations at the CCDC between when he arrived on August 1, 2013, and when he was transferred out on October 24, 2013, he consistently

---

[26] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[27] *Conn v. City of Reno*, 591 F.3d 1081–82 (9th Cir. 2009), *vacated on other grounds* by *City of Reno v. Conn.*, 563 U.S. 915 (2011).

[28] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 134 (9th Cir. 1981).

[29] *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

[30] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

[31] *Oregon Advocacy Center*, 322 F.3d at 1120 n.11.

[32] *Monell v. N.Y.C. Dep't of Social Servs*, 436 U.S. 658 (1978).

denied that he was experiencing any mental-health issues and he did not exhibit any symptoms. An August 1, 2013, receiving-screening note states that Lee reported a history of hallucinations but did not then appear to be experiencing symptoms and denied any suicidal or homicidal ideations.[33] An August 2, 2013, mental-health screening form indicates that Lee reported experiencing hallucinations five years earlier but that he denied currently experiencing symptoms and that he did not exhibit symptoms of current mental-health issues.[34]

On August 21, 2013, Lee underwent a psychiatric evaluation by Tiffany Russaw, N.P. Russaw noted that Lee stated that he could not believe that he had been found unfit to proceed, that the doctors had "perjured themselves," and he denied currently experiencing auditory or visual hallucinations.[35] She noted that Lee reported previously being diagnosed with schizophrenia but had not been taking medications to treat it for two years.[36] Russaw concluded: "Axis I: cocaine dependence in remission, methamphetamine dependence in remission, and rule out Plaintiff self-reported schizophrenia."[37] She referred Lee for a follow-up appointment in one month and encouraged Lee to kite psych services if he began experiencing symptoms.[38]

David Mathis, D.O., examined Lee at his follow-up appointment one month later. Lee reported that Lee was "okay," denied having suicidal thoughts, stated that he was not on any psychiatric medications, and denied having any auditory or visual hallucinations at that time.[39] Dr. Mathis observed and noted that Lee had an unimpaired memory, unimpaired orientation, good demeanor, good appearance, normal psychomotor activity, normal mood, an appropriate affect, and

---

[33] ECF No. 101-2 at 79–80.

[34] *Id.* at 77.

[35] *Id.* at 65.

[36] *Id.*

[37] *Id.* at 69.

[38] *Id.*

[39] *Id.* at 61–62.

appropriate thought process.[40] Dr. Mathis made the following diagnosis: "Axis I: cocaine dependence in remission, methamphetamine dependence in remission, and rule out self-reported schizophrenia."[41] An October 15 progress note indicates that Lee was receptive, had no behavioral issues, and was stable and not currently on any medication.[42]

Though Lee submitted numerous kites for medical treatment, including requests for an increased diet, dental care, anti-fungal cream, anti-bacterial ointment, and testing for various blood diseases,[43] he submitted only two kites relating to his mental health. On August 16, 2013—the same day that Lee was deemed not competent to proceed in the state trial court—he kited medical stating that he wanted "classification to keep up with my situation of being transferred to Lake's Crossing [] I was found unfit to proceed! I am not taking medications and did not see what the doctor wrote today."[44] On October 21, 2013—three days before Lee was transferred to federal custody—he kited medical requesting to see a psychiatrist and reporting that he was suffering hallucinations and unable to sleep and focus.[45] On the morning of October 24, 2013, Lee was informed that his appointment was scheduled for the next day, but Lee was released to federal custody later on the 24th.[46]

There is zero evidence that Lee told anyone at the CCDC that he was experiencing any of the symptoms or conditions that he claims he received deliberately indifferent treatment for, i.e. "delusions, psychosis, schizophrenia axis II, auditory hallucinations, and antisocial behaviors"[47] or that he exhibited any of these symptoms—despite numerous contacts with multiple medical

---

[40] *Id.*

[41] *Id.* at 64.

[42] *Id.* at 57.

[43] *Id.* at 6–9, 12–21.

[44] *Id.* at 5.

[45] *Id.* at 24.

[46] *Id.* at 55.

[47] *Id.*

providers—until days before he was transferred to federal custody. The CCDC medical providers then scheduled him for an appointment, but he was transferred before that appointment took place. The record reflects that Lee's various requests for medical treatment were promptly responded to and that he was consistently examined by treatment providers. For these reasons, there is no genuine issue for trial as to Lee's allegedly constitutionally deficient treatment.

Additionally, the only policy that Lee identifies as the cause for his alleged constitutionally deficient medical treatment is Metro's purported policy of not timely transferring an inmate to Lake's Crossing. But there is no evidence that Metro failed to promptly place Lee's name on the transfer list; Lake's Crossing refused to promptly admit him—a decision that Metro has no control over. Lee does not identify any other constitutionally deficient policy, and the treatment providers at the CCDC are all supplied by the CCDC's independent-contractor medical provider, NaphCare. I therefore grant Metro's motion for summary judgment, deny Lee's countermotion and motion to reconsider, and close this case.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Metro's motion for summary judgment **[ECF No. 101] is GRANTED** and Lee's countermotion for summary judgment and motion to reconsider **[ECF Nos. 104, 107] are DENIED.**

The Clerk of Court is instructed to enter judgment for Metro and against Lee and to CLOSE THIS CASE.

Dated December 12th, 2016.

_____
Jennifer A. Dorsey
United States District Judge